Matthew J. Langley (SBN 342846)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
t: 312-576-3024
matt@almeidalawgroup.com

*Attorney for Plaintiff and the Proposed Classes*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

BIANCA JOHNSTON, *individually and on behalf of herself and all others similarly situated*,

      Plaintiff,

      v.

ALL ONE GOD FAITH, INC. d/b/a DR. BRONNER'S,

      Defendant.

Case No. 3:25-cv-01147

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)
2. Violation of the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*)
3. Violation of the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*)
4. Fraud by Misrepresentation
5. Negligent Misrepresentation
6. Unjust Enrichment

**DEMAND FOR JURY TRIAL**

# CLASS ACTION COMPLAINT

Plaintiff Bianca Johnston ("Plaintiff"), individually and on behalf of all others similarly situated, through her undersigned attorney, brings the following class action complaint against Defendant All One God Faith, Inc. d/b/a Dr. Bronner's ("Defendant" or "Dr. Bronner's") and alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1.  In recent years, consumer demand for toothpaste made from natural, organic, and clean ingredients has skyrocketed as health-conscious consumers seek products free of contaminants and heavy metals. When making these purchasing decisions, consumers rely on information provided by the toothpaste manufacturer. And reasonably so. The average consumer is not in a position to determine whether the manufacturer's representations about the quality and safety of the product are true. They must trust that the manufacturer's representations are truthful and accurate, and that the manufacturer has not omitted any important or material information about the product from its labeling.

2.  However, as Plaintiff alleges, while Defendant Dr. Bronner's represents that its toothpaste is "made with chemicals safer for human health,"[1] in reality its toothpaste contains powerful neurotoxins like mercury, lead, and arsenic in high concentrations, contrary to the representations it makes to the consumer about its product.

3.  Defendant has improperly, deceptively, and misleadingly labeled and marketed its toothpaste products, including Dr. Bronner's All-One Toothpaste ("Dr.

---

[1] Dr. Bronner's – All-One Toothpaste (Peppermint, 5 ounce), AMAZON, https://www.amazon.com/Dr-Bronners-Toothpaste-Fluoride-Free-Ingredients/dp/B00XZ2EO84?th=1.

Bronner's Toothpaste")[2] to reasonable consumers, like Plaintiff and the members of the proposed classes, by stating that it is comprised of "safer chemicals" and "made with chemicals safer for human health"[3] and by omitting and not disclosing to consumers on its packaging that Dr. Bronner's Toothpaste is contaminated with mercury, lead, and arsenic (collectively, "Heavy Metals").

4.     Plaintiff and Class members relied on Defendant's misrepresentations on and omissions from Dr. Bronner's Toothpaste's packaging and marketing materials, which were prepared, reviewed, and/or approved by Defendant and its agents and disseminated by Defendant and its agents. The misrepresentations and omissions were material content that a reasonable consumer would consider important when purchasing Dr. Bronner's Toothpaste.

5.     This action seeks both injunctive and monetary relief on behalf of the proposed classes, including an order requiring Defendant to recall all Dr. Bronner's Toothpaste that does not disclose the presence of Heavy Metals, enjoining Defendant from selling Dr. Bronner's Toothpaste that contains Heavy Metals, and restoring monies to Plaintiff and the members of the proposed classes, all of whom would not have purchased Dr. Bronner's Toothpaste had they known it contained Heavy Metals.

6.     Plaintiff brings this action against Defendant on behalf of herself and the members of the Classes who purchased Dr. Bronner's Toothpaste during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over all causes of action alleged in this Class Action Complaint under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the amount in controversy exceeds the sum or value of

---

[2] Dr. Bronner's toothpaste brands include: Peppermint – All One Toothpaste, Spearmint – All-One Toothpaste, Cinnamon - All-One Toothpaste, and Anise All-One Toothpaste.

[3] *Id.*

$5,000,000, exclusive of interest and costs, the number of members of the proposed classes in the aggregate is more than 100, and minimal diversity exists because at least one member of the Class is a citizen of states other than the state in which Defendant is a citizen.

8. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in this District in the state of California. Further, Defendant conducts and transacts business in the state of California and contracts to supply goods within the state of California, such that it has had continuous and systematic contacts with the state of California.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff suffered injury as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendant's principal place of business is in this District.

## PARTIES

10. Plaintiff Bianca Johnston is and, at all relevant times, has been a citizen of the state of California, in the county of San Bernardino.

11. Plaintiff purchased Dr. Bronner's Toothpaste beginning in approximately 2015 and as recently as March and April 2025. When Plaintiff purchased Dr. Bronner's Toothpaste, she did not know that it contained Heavy Metals and would not have made the purchases had she known.

12. During the time Plaintiff purchased and used Dr. Bronner's Toothpaste, including Dr. Bronner's peppermint toothpaste, and due to Defendant's misrepresentations and omissions concerning the presence of Heavy Metals in Dr. Bronner's Toothpaste, Plaintiff was unaware Dr. Bronner's Toothpaste contained any level of Heavy Metals. Plaintiff would not have purchased Dr. Bronner's Toothpaste if Defendant had disclosed that Dr. Bronner's Toothpaste contains Heavy Metals.

13. Defendant All One God Faith, Inc. d/b/a Dr. Bronner's produces

personal care products, including toothpaste. Defendant's headquarters and principal place of business is located at 1335 Park Center Drive, Vista, California.

14. Defendant has been producing, marketing, distributing, and selling Dr. Bronner's Toothpaste since 2015. Defendant produces, markets, distributes, and sells Dr. Bronner's Toothpaste throughout the state of California and the United States, including online at Amazon.com and Walmart.com and in Walmart's physical stores throughout the state of California and the United States.

15. During all relevant times, Defendant controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of Dr. Bronner's Toothpaste. Defendant therefore had control over how to label Dr. Bronner's Toothpaste concerning its contents.

16. Defendant knowingly created, allowed, oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive packaging and related marketing for Dr. Bronner's Toothpaste, which did not disclose the presence of Heavy Metals and instead touted the safety of Dr. Bronner's Toothpaste.

17. Dr. Bronner's Toothpaste includes Dr. Bronner's All-One Toothpaste – Peppermint:



18.	Dr. Bronner has published the net sales, revenue, and profits figures depicted in the following chart.

|  | Net Sales | Revenue | Profits |
|---|---|---|---|
| 2023 |  | $199,600,000 |  |
| 2022 |  | $170,300,000 |  |
| 2021 | $169,000,000 |  |  |
| 2020 | $188,000,000 |  |  |
| 2019 | $129,000,000 |  |  |
| 2018 | $122,500,000 |  |  |
| 2017 |  | $111,160,169 | $22,911,346 |
| 2016 |  | $103,933,309 | $21,345,716 |
| 2015 | $95,700,000 |  |  |
| 2014 | $80,300,000 |  |  |

19.	Defendant will incur substantial costs if it is ordered to recall all Dr. Bronner's Toothpaste that does not disclose the presence of mercury, lead, and arsenic on its packaging and to cease selling Dr. Bronner's Toothpaste that does not disclose the presence of these heavy metals.

**FACTUAL BACKGROUND**

**I.	Dr. Bronner's Toothpaste Contains Mercury, Lead, and Arsenic.**

*a.	Lead Safe Mama's Test Results.*

20.	In April 2025, the product safety advocacy group Lead Safe Mama published a chart containing the toxicant profiles of fifty-one toothpaste and tooth powder products (the "LSM Chart").[4]	The toxicant profiles in the LSM Chart are

---

[4] Tamara Rubin, *Chart Comparing the Toxicant Profiles of Popular Toothpaste and Tooth Powder Products Tested by an Independent, Third-Party Lab in 2025*, Lead Safe Mama (Jan. 31, 2025), https://tamararubin.com/2025/01/toothpaste-chart/.

FIRST AMENDED CLASS ACTION COMPLAINT

derived from laboratory reports produced by independent, third-party laboratories that tested the products.[5]  The independent third-party laboratory that tested Dr. Bronner's Toothpaste is SimpleLab, Inc. ("SimpleLab").[6]

21.    SimpleLab's test results show that Dr. Bronner's Toothpaste tested positive for detectable levels of lead, mercury, and arsenic in the following concentrations:

       a.  Lead: 160.0 parts per billion ("ppb")[7]

       b.  Mercury: 6.0 ppb[8]

       c.  Arsenic: 23.0 ppb[9]

22.    The SimpleLab test results state that "that "[q]uality control data" for the test of Dr. Bronner's Toothpaste "is within laboratory defined or method specified acceptance limits except where noted" and no such exceptions are described.[10]

23.    While most of the fifty-one toothpaste and tooth powder products described in the LSM Chart tested positive for detectable levels of some or all of these heavy metals, it is notable that five of the toothpaste products did not test positive for detectable levels of these heavy metals, demonstrating that toothpaste can be manufactured without these contaminants.

### b.    *Plaintiff's Test Results.*

24.    Plaintiff sent his unit of Dr. Bronner's Toothpaste to Eurofins Lancaster Laboratories Environment Testing, LLC ("Eurofins") to be tested for the presence of heavy metals.

---

[5] *Id.*

[6] Tamara Rubin, *Dr. Bronner's All-One Peppermint Toothpaste Tests Positive for Lead, Arsenic, & Mercury: 2025 Lab Report Here*, Lead Safe Mama (Feb. 27, 2025), https://tamararubin.com/2025/02/dr-bronners-all-one-peppermint-toothpaste/.

[7] *Id.* (posting SimpleLab test results).

[8] *Id.* (posting SimpleLab test results).

[9] *Id.* (posting SimpleLab test results).

[10] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

25. Eurofins' test results show that Plaintiff's unit of Dr. Bronner's Toothpaste tested positive for lead with a concentration of 210 ppb – even higher than the test results produced by SimpleLab for Lead Safe Mama.

26. Eurofins analysis of Plaintiff's unit of Dr. Bronner's Toothpaste followed an established protocol for identifying detectable levels of metals and trace metals in samples using inductively coupled plasma-mass spectrometry.

27. Eurofins also employed strict quality assurance and quality control standards while testing Plaintiff's unit of Dr. Bronner's Toothpaste.

## II. The Presence of Mercury, Lead, and Arsenic in Dr. Bronner's Toothpaste Requires Disclosure.

28. The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared mercury, lead, and arsenic "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[11]

29. Indeed, the FDA has acknowledged that "exposure to these [heavy metals is] likely to have the most significant impact on public health" and has prioritized them in connection with its Toxic Elements Working Group to look at reducing the risks associated exposure to these heavy metals.[12]

30. There is no known safe level of exposure to lead.[13] According to the

---

[11] *Staff Report: Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, U.S. House of Representatives Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Feb. 4, 2021 ("House Report") at 2, https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

[12] *Environmental Contaminants in Food*, U.S. Food & Drug Administration, https://www.fda.gov/food/chemical-contaminants-pesticides/environmental-contaminants-food (last visited Apr. 27, 2025).

[13] *Lead in Food and Foodwares*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares; Barbosa, *supra*.

8

Centers for Disease Control and Prevention ("CDC"), the United States' public health agency, "[c]onsuming even small amounts of lead can be harmful."[14] The CDC warns that harm from exposure to lead can range from illness to even death.[15]

31. The WHO has designated mercury as one of the ten most dangerous chemicals to public health due to its neurotoxic effects.[16]

32. According to the CDC, exposure to mercury can affect the nervous system and kidneys.[17] And the FDA cautions that "the very young are more vulnerable to the harmful health effects of mercury exposure."[18]

33. The FDA warns that children "are particularly vulnerable to the potential harmful effects from methylmercury exposure because of their smaller body sizes and rapid growth and metabolism."[19]

34. The CDC reports that children exposed to mercury have been shown to have learning, sensory, and movement problems.[20] Exposure to mercury "during times of active brain development can lead to neurological effects such as decreased

---

[14] *About Lead in Foods, Cosmetics, and Medicines*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/lead-prevention/prevention/foods-cosmetics-medicines.html.
[15] *Id.*
[16] *Mercury*, WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/fact-sheets/detail/mercury-and-health; Milioni, *et al.*, *Neurotoxic Impact of Mercury on the Central Nervous System Evaluated by Neuropsychological Tests and on the Autonomic Nervous System Evaluated by Dynamic Pupillometry*, NEUROTOXICOLOGY (March 2017).
[17] *ToxFAQs for Mercury*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://wwwn.cdc.gov/TSp/ToxFAQs/ToxFAQsDetails.aspx?faqid=113&toxid=24#:~:text=Top%20of%20Page-,How%20can%20I%20be%20exposed%20to%20mercury%3F,exposed%20to%20inorganic%20mercury%20salts.
[18] *Mercury in Food*, United States Food and Drug Administration, https://www.fda.gov/food/environmental-contaminants-food/mercury-food.
[19] *Mercury in Food*, United States Food and Drug Administration, https://www.fda.gov/food/environmental-contaminants-food/mercury-food.
[20] Base-O-Reilly, *supra*.

9

measures of intelligence, difficulty in memory and cognition, and problems with gross and fine motor skills," warns the FDA.[21]  Even in small concentrations, mercury presents serious health risks.  According to the WHO, "[e]xposure to mercury – even in small amounts – may cause serious health problems and is a threat to the development of the child in utero and early in life."[22]

35.    Similarly, the CDC warns that ingesting even low levels of arsenic can cause "nausea and vomiting, decreased production of red and white blood cells, abnormal heart rhythm, damage to blood vessels, and a sensation of 'pins and needles' in hands and feet."[23]

36.    Heavy metals bioaccumulate in the body, meaning the body cannot excrete the toxins as quickly as they are absorbed, and the risk they pose increases over time and can remain in one's body for years.[24]

37.    As such, even low levels of exposure can cause serious and often irreversible health consequences.

38.    Given this potential for harm, consumers rightly rely on manufacturers of consumable products to test for these dangerous contaminants and, when detected, disclose their presence or refrain from making representations about their product that would misrepresent to consumers the absence of those contaminants, such as lead, mercury, and arsenic, in their products.

---

[21] *Mercury in Food*, United States Food and Drug Administration, https://www.fda.gov/food/environmental-contaminants-food/mercury-food.
[22] *Mercury*, WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/fact-sheets/detail/mercury-and-health.
[23] *ToxFAQs for Arsenic*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=19&toxid=3.
[24] *Heavy Metals in Baby Food: What you Need to Know*, Consumer Reports, Aug. 16, 2018 (updated June 27, 2023), https://www.consumerreports.org/health/food-safety/heavy-metals-in-baby-food-a6772370847/ (last visited Apr. 27, 2025).

### III. Defendant Failed to Disclose that Dr. Bronner's Toothpaste Contains Mercury, Lead, and Arsenic.

39. Defendant lists the ingredients of Dr. Bronner's Toothpaste on the packaging; however, as the following image shows, Defendant fails to disclose that Dr. Bronner's Toothpaste contains mercury, lead, and arsenic:



40. Defendant also does not disclose the presence of mercury, lead, and arsenic in Dr. Bronner's Toothpaste on its website.

**IV. Defendant Made Misrepresentations Concerning the Safety of Dr. Bronner's Toothpaste.**

41. Despite Dr. Bronner's Toothpaste being contaminated with mercury, lead, and arsenic, Defendant misrepresents that Dr. Bronner's Toothpaste is comprised of "safer chemicals" and that it is "made with chemicals safer for human health."

42. The following image from Defendant's Amazon listing for Dr. Bronner's Toothpaste depicts Defendant's misrepresentations:

---

### ◌ Sustainability features

This product has sustainability features recognized by trusted certifications.

### Safer chemicals

Made with chemicals safer for human health and the environment.

As certified by

 Natrue

**CLIMATE PLEDGE FRIENDLY**

Discover more products with sustainability features. Learn more

---

**V. Defendant's Misrepresentations and Omissions Concerning the Presence of Mercury, Lead, and Arsenic in Dr. Bronner's Toothpaste Misled and Deceived Consumers.**

43. Defendant manufactures, markets, advertises, and sells consumer products.

44. Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing process of Dr. Bronner's Toothpaste, the manufacturing process of the ingredients and raw materials Dr. Bronner's Toothpaste contains, and the risks associate with those processes, such as the risk of mercury, lead, and arsenic contamination. Defendant also has the ability

to test Dr. Bronner's Toothpaste for mercury, lead, and arsenic contamination prior to releasing Dr. Bronner's Toothpaste into the stream of commerce.

45. As such, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its toothpaste.

46. Defendant has a duty to provide consumers, like Plaintiff and the members of the Classes, with accurate information about the contents of Dr. Bronner's Toothpaste.

47. In particular, Defendant has a duty to disclose the presence of lead and arsenic in its products because exposure to heavy metals is material to consumers like Plaintiff and Class Members.

48. Moreover, this duty to disclose exists even if the amount or concentration of the heavy metal in the product is at or below a safety threshold set by a government agency. A reasonable consumer such as Plaintiff finds the presence of any amount of lead or arsenic in a product such as toothpaste material due to the potential for harm to health associated with exposure to these heavy metals.

49. Defendant knew that reasonable consumers such as Plaintiff and the members of the Classes would be the end purchasers of Dr. Bronner's Toothpaste and the targets of its advertising.

50. Defendant intended that the packaging and its website would be considered by the end purchasers of Dr. Bronner's Toothpaste, including Plaintiff and the members of the Classes.

51. Defendant directly marketed to Plaintiff and the members of the Classes through the packaging of Dr. Bronner's Toothpaste and the representations it made in online retail websites like Amazon. Plaintiff and the members of the Classes are the intended beneficiaries of this marketing.

52. Defendant's misrepresentations and omissions were material and intentional. Consumers such as Plaintiff and the members of the Classes are

influenced by the marketing and advertising campaign and the labeling of Dr. Bronner's Toothpaste, including the listed ingredients. Defendant knew that if it had not omitted that Dr. Bronner's Toothpaste contains mercury, lead, and arsenic, then Plaintiff and the members of the Classes would not have purchased Dr. Bronner's Toothpaste at all.

53. By making misrepresentations about the contents and safety of Dr. Bronner's Toothpaste and omitting that Dr. Bronner's Toothpaste contains mercury, lead, and arsenic on the packaging and marketing materials for Dr. Bronner's Toothpaste throughout the Class Period, Defendant knew that those omissions are material to consumers.

54. Defendant's misrepresentations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchasing decisions.

55. Defendant's false, misleading, and deceptive misrepresentations and omissions regarding Dr. Bronner's Toothpaste are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and mislead Plaintiff and the members of the Classes.

56. In making the false, misleading, and deceptive misrepresentations and omissions, Defendant knew and intended that consumers would pay a premium for its product, which consumers would not otherwise pay had they known that the products contained lead, mercury, and arsenic.

**VI.  Plaintiff's and the Class Members' Reliance on Defendant's Misrepresentations and Omissions Was Reasonable and Foreseeable by Defendant.**

57. Consumers like Plaintiff and the members of the Classes have become increasingly concerned about the effects of ingredients in products that they orally ingest. Companies like Defendant have capitalized on consumers' desire for safe products and, indeed, consumers are willing to pay, and have paid, a premium for

14

these products.

58.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as mercury, lead, or arsenic, and therefore must and do rely on Defendant to truthfully and honestly report what Dr. Bronner's Toothpaste contains on its packaging.

59.     Consumers rely on marketing materials when making purchasing decisions.

60.     Plaintiff and the members of the Classes reasonably relied to their detriment on Defendant's misrepresentations and omissions.

61.     The fact that Dr. Bronner's Toothpaste is contaminated with mercury, lead, and arsenic is not information that is reasonably accessible to Plaintiff and the members of the Classes.

## VII.    Plaintiff and the Class Members Were Directly Harmed by Defendant's Misrepresentations and Omissions.

62.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive misrepresentations and omissions, Defendant injured Plaintiff and the members of the Classes in that they:

a.  Paid a sum of money for Dr. Bronner's Toothpaste that was not what Defendant represented;

b.  Paid a premium price for Dr. Bronner's Toothpaste that was not what Defendant represented;

c.  Were deprived of the benefit of the bargain because the products they purchased were different from what Defendant represented;

d.  Were deprived of the benefit of the bargain because the products they purchased had less value than what Defendant represented;

e.  Ingested substances that were of a different quality than what Defendant promised; and

f. Were denied the benefit of the properties of Dr. Bronner's Toothpaste that Defendant promised.

63. Had Defendant not made the false, misleading, and deceptive misrepresentations and omissions, Plaintiff and the members of the Classes would not have purchased Dr. Bronner's Toothpaste and/or would not have been willing to pay the same amount for Dr. Bronner's Toothpaste that they purchased and, consequently, Plaintiff and the members of the Classes would not have been willing to purchase those Dr. Bronner's Toothpaste products.

64. The Dr. Bronner's Toothpaste products that Plaintiff and the members of the Classes received were worth less than the Dr. Bronner's Toothpaste products for which they paid because the products they purchased contained mercury, lead, and arsenic.

65. Plaintiff and the members of the Classes all paid money for the Dr. Bronner's Toothpaste products that they purchased. Consequently, Plaintiff and the members of the Classes have suffered injury in fact and lost money as a result of Defendant's wrongful conduct. Had Plaintiff and the members of the Classes known that Dr. Bronner's Toothpaste contains mercury, lead, and arsenic, they would not have been willing to purchase it any price.

## CLASS ACTION ALLEGATIONS

66. Plaintiff brings this action as a class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of herself and all others similarly situated, as members of the following classes of persons (collectively, the "Classes" and "Class Members"):

Nationwide Class: All persons who, within the applicable statutory period, purchased Dr. Bronner's Toothpaste for household use and not for resale ("Nationwide Class").

California Subclass: All persons who, while in the state of California

and within the applicable statutory period, purchased Dr. Bronner's Toothpaste for household use and not for resale ("California Subclass").

67. The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parent have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

68. This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation, and the members of the Classes are easily ascertainable.

69. The members of the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and the Court.

70. Questions of law and fact common to Plaintiff and the Classes include, but are not limited to, the following:

      a. Whether Defendant knew or should have known that Dr. Bronner's Toothpaste contained or may contain Heavy Metals;

      b. Whether Defendant failed to disclose that Dr. Bronner's Toothpaste contained or may contain Heavy Metals;

      c. Whether Defendant's omissions are material to a reasonable consumer;

      d. Whether Defendant had knowledge that the omissions were material

and false, deceptive, and misleading;

e. Whether the inclusion of Heavy Metals in Dr. Bronner's Toothpaste is material to a reasonable consumer;

f. Whether Defendant's marketing materials for Dr. Bronner's Toothpaste are false, deceptive, and misleading based on Defendant's omissions;

g. Whether Defendant's omissions are likely to deceive a reasonable consumer;

h. Whether Defendant made false or misleading statements of fact in marketing materials for Dr. Bronner's Toothpaste;

i. Whether Defendant violated the laws of the State of California;

j. Whether Defendant owed a duty of care;

k. Whether Defendant breached its duty of care;

l. Whether Defendant owed a duty to disclose;

m. Whether Defendant breached its duty to disclose;

n. Whether Defendant engaged in unfair trade practices;

o. Whether Defendant engaged in false advertising;

p. Whether the claims of Plaintiff and the members of the Classes serve a public benefit;

q. Whether Plaintiff and members of the Classes are entitled to actual, statutory, treble, and punitive damages; and

r. Whether Plaintiff and members of the Classes are entitled to declaratory and injunctive relief.

71.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to

the numerous common questions that dominate this action.

72.  Plaintiff's claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

73.  Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interest incompatible with the interests of the Classes, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

74.  Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small such that, absent representative litigation, it would not be feasible for members of the Classes to redress the wrongs done to them.

75.  Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

76.  As a result of the foregoing, class treatment is appropriate.

<u>**COUNT I**</u>
**Violation of the Unfair Competition Law,**
**California Business & Professions Code § 17200, *et seq.***
***(On behalf of Plaintiff and the Nationwide Class and California Subclass)***

77.  Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

78.  Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

79.  The Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal Bus. & Prof. Code § 17200.

**Fraudulent**

80.  Defendant's failure to disclose that Dr. Bronner's Toothpaste contains Heavy Metals is likely to deceive reasonable consumers and the public.

81.     Defendant's material misrepresentations concerning the safety and contents of Dr. Bronner's Toothpaste are likely to deceive reasonable consumers and the public.

**Unlawful**

82.     As alleged herein, Defendant's failure to disclose the presence of Heavy Metals in Dr. Bronner's Toothpaste as well as Defendant's material misrepresentations concerning the safety and contents of Dr. Bronner's Toothpaste violates at least the following laws:

        a.  The CLRA, California Business & Professions Code §§ 1750, *et seq.*;

        b.  The False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*; and

        c.  The Sherman Food, Drug, and Cosmetic Law, California Health & Safety Code §§ 109875, *et seq.*

**Unfair**

83.     Defendant committed unfair practices by selling Dr. Bronner's Toothpaste without disclosing the presence of Heavy Metals contained therein or without adequate testing or screening for the Heavy Metals, which rendered Dr. Bronner's Toothpaste adulterated and misbranded.

84.     Defendant's conduct with respect to the packaging, marketing, and sale of Dr. Bronner's Toothpaste is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of Defendant's conduct, if any, does not outweigh the gravity of the harm to its victims.

85.     Defendant's conduct with respect to the packaging, marketing, and sale of Dr. Bronner's Toothpaste is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law.

86.     Defendant's conduct with respect to the packaging, marketing, and sale

of Dr. Bronner's Toothpaste is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

87.     Defendant was obligated to disclose the presence of Heavy Metals in Dr. Bronner's Toothpaste because (1) Defendant had exclusive knowledge of the presence of Heavy Metals in Dr. Bronner's Toothpaste that was not known or reasonably accessible to Plaintiff and the members of the Classes; and (2) Defendant actively concealed the presence of Heavy Metals from Plaintiff and the members of the Classes.

88.     Plaintiff and the members of the Classes relied on representations made by Defendant on packaging and marketing materials for Dr. Bronner's Toothpaste when making their purchasing decisions.  If Plaintiff and the members of the Classes had known Dr. Bronner's Toothpaste contained Heavy Metals, they would not have purchased Dr. Bronner's Toothpaste.

89.     In accordance with California Business & Professions Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to recall all Dr. Bronner's Toothpaste that contains Heavy Metals and that does not disclose the same.

90.     Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase Dr. Bronner's Toothpaste in the future if she can be assured Dr. Bronner's Toothpaste does not contain Heavy Metals.

91.     On behalf of herself and the Classes, Plaintiff also seeks an order for the restitution of all monies from the sale of Dr. Bronner's Toothpaste, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT II

### Violation of California's False Advertising Law,
### California Business & Professions Code §§ 17500, *et seq.*
### *(On behalf of Plaintiff and the Nationwide Class and California Subclass)*

92.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

93.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

94.    California's False Advertising Law prohibits any statement or omission in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code § 17500.

95.    As set forth herein, Defendant's failure to disclose that Dr. Bronner's Toothpaste contains Heavy Metals is likely to deceive the public.

96.    Further, Defendant's material misrepresentations concerning the safety and contents of Dr. Bronner's Toothpaste are likely to deceive the public.

97.    Defendant knew or should have known Dr. Bronner's Toothpaste contained undisclosed levels of Heavy Metals.

98.    Defendant intended to deceive reasonable consumers and the public by failing to disclose that Dr. Bronner's Toothpaste contains Heavy Metals and by making material misrepresentations concerning the safety and contents of Dr. Bronner's Toothpaste.

99.    Defendant had a duty to disclose the presence of Heavy Metals in Dr. Bronner's Toothpaste, and by failing to disclose this information, misled consumers.

100.    If Defendant had disclosed the presence of Heavy Metals in Dr. Bronner's Toothpaste or made consumers aware of its failure to disclose this information, Plaintiff and the members of the Classes would not have purchased Dr. Bronner's Toothpaste.

101.    Defendant's conduct is ongoing and continuing, such that prospective

injunctive relief is necessary, especially given Plaintiff's desire to purchase Dr. Bronner's Toothpaste in the future if she can be assured Dr. Bronner's Toothpaste does not contain Heavy Metals.

102. Plaintiff and the members of the Classes are entitled to injunctive and equitable relief as well as restitution in the amount they spent on Dr. Bronner's Toothpaste.

<u>**COUNT III**</u>
**Violation of California's Consumers Legal Remedies Act,**
**California Civil Code § 1750, *et. seq.***
***(On behalf of Plaintiff and the Nationwide Class and California Subclass)***

103. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

104. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

105. Plaintiff and the members of the Classes are "consumers," as the term is defined by California Civil Code § 1761(d).

106. Dr. Bronner's Toothpaste products are "goods," as that term is defined in California Civil Code § 1761(a).

107. Plaintiff, each member of the Classes, and Defendant are each a "person" as that term is defined in California Civil Code § 1761(c).

108. Plaintiff and each member of the Classes' purchases of Dr. Bronner's Toothpaste constituted a "transaction" as that term is defined in California Civil Code § 1761(e).

109. Defendant's conduct alleged herein violates the following provisions of California's Consumers Legal Remedies Act ("CLRA"):

    a. California Civil Code § 1770(a)(5) by failing to disclose the presence of Heavy Metals in Dr. Bronner's Toothpaste;

    b. California Civil Code § 1770(a)(7) by knowingly, recklessly, and/or

intentionally representing that Dr. Bronner's Toothpaste products were of a particular standard, quality, or grade, when they were of another; and

c. California Civil Code § 1770(a)(9) by knowingly, recklessly, and/or intentionally advertising Dr. Bronner's Toothpaste products with intent not to sell them as advertised.

110. The omissions were material as reasonable consumers such as Plaintiff and the members of the Classes would deem the presence of Heavy Metals important in determining whether to purchase Dr. Bronner's Toothpaste.

111. Defendant was obligated to disclose the presence of Heavy Metals in Dr. Bronner's Toothpaste because (1) Defendant had exclusive knowledge of the presence of Heavy Metals in Dr. Bronner's Toothpaste, which was not known or reasonably accessible to Plaintiff and the members of the Classes; and (2) Defendant actively concealed the presence of Heavy Metals from Plaintiff and the members of the Classes.

112. As a direct and proximate result of these violations, Plaintiff and the members of the Classes have been harmed, and such harm will continue unless and until Defendant is enjoined from using the misleading packaging and marketing materials described herein in any matter in connection with the advertising and sale of Dr. Bronner's Toothpaste.

113. On May 15, 2025, counsel for Plaintiff and the members of the Classes sent Defendant written notice (via U.S. certified mail and with return receipt requested) that its conduct is in violation of the CLRA.

114. Defendant failed to provide appropriate relief for its violations of the CLRA §§ 1770(a)(5), (7), and (9) within thirty days of receipt of Plaintiff's notification. In accordance with CLRA § 1782(b), Plaintiff and the members of the Classes are entitled, under CLRA § 1780, to recover and obtain the following relief

FIRST AMENDED CLASS ACTION COMPLAINT

for Defendant's violations:

115. Actual damages under CLRA 1780(a)(1);

116. Restitution of property under CLRA § 1780(a)(3);

117. Punitive damages under CLRA § 1780(a)(4); and

118. Any other relief the Court deems proper under CLRA § 1780(a)(5).

119. Plaintiff and the members of the Classes seek an aware of attorneys' fees pursuant to California Civil Code § 1780(c), California Code of Civil Procedure § 1021.5, and any other applicable law.

<u>**COUNT IV**</u>
**Fraud by Misrepresentation**
***(On behalf of Plaintiff and the Nationwide Class and California Subclass)***

120. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

121. Plaintiff brings this claim under California law individually and on behalf of the members of the Classes against Defendant.

122. Defendant's claims in marketing materials for Dr. Bronner's Toothpaste gave Plaintiff and the members of the Classes the impression that Dr. Bronner's Toothpaste did not contain Heavy Metals, both by the affirmative representations regarding the safety and natural ingredients in the product as well as by omitting the fact that the products do, in fact, contain Heavy Metals, which was material to Plaintiff and the members of the Classes when deciding whether to purchase and use Dr. Bronner's Toothpaste.

123. Defendant's claims in marketing materials for Dr. Bronner's Toothpaste were false because Dr. Bronner's Toothpaste contained Heavy Metals.

124. Defendant knew that its claims on packaging and in marketing materials for Dr. Bronner's Toothpaste were false when Defendant made them because:

a. Defendant was in a superior position to know the chemical

25

composition of Dr. Bronner's Toothpaste;

   b. Defendant was in a superior position to know the suitability of Dr. Bronner's Toothpaste for its ordinary use; and

   c. Defendant knew that ordinary consumers such as Plaintiff and the members of the Classes could not reasonably have been expected to learn about the presence of Heavy Metals in Dr. Bronner's Toothpaste without Defendant disclosing that information.

125.   Defendant intended for consumers, including Plaintiff and the members of the Classes, to rely on its claims on packaging and in marketing materials for Dr. Bronner's Toothpaste.

126.   Plaintiff and each member of the Classes reasonably relied on Defendant's misrepresentations in marketing materials for Dr. Bronner's Toothpaste.

127.   Plaintiff and each member of the Classes were harmed as a direct and proximate result of Defendant's conduct.  Plaintiff and the members of the Classes suffered actual damages because they purchased Dr. Bronner's Toothpaste products that were worth less than the price paid and they would not have purchased Dr. Bronner's Toothpaste if Defendant had disclosed that Dr. Bronner's Toothpaste contains Heavy Metals.

128.   Plaintiff and the members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under law.

## COUNT V
### Negligent Misrepresentation
***(On behalf of Plaintiff and the Nationwide Class and California Subclass)***

129.   Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

130.   Plaintiff brings this claim under California law individually and on

26

behalf of the members of the Classes against Defendant.

131. Defendant's claims in marketing materials for Dr. Bronner's Toothpaste gave the impression to a reasonable consumer that Dr. Bronner's Toothpaste does not contain Heavy Metals, both by the affirmative representations regarding the safety and natural ingredients in the product as well as by omitting the fact that the products do, in fact, contain Heavy Metals.

132. Defendant's claims on packaging and in marketing materials for Dr. Bronner's Toothpaste are material to a reasonable consumer because they relate to human health and safety. Reasonable consumers would find that these claims are important and would be reasonably induced to purchase Dr. Bronner's Toothpaste based on these claims.

133. Defendant intended for consumers, including Plaintiff and the members of the Classes, to rely on its claims in marketing materials for Dr. Bronner's Toothpaste.

134. In selling Dr. Bronner's Toothpaste, Defendant acted in the ordinary course of its business and had pecuniary interest in consumers purchasing its products.

135. Defendant knew or was negligent in not knowing that Dr. Bronner's Toothpaste contained Heavy Metals.

136. Defendant negligently marketed that Dr. Bronner's Toothpaste did not contain Heavy Metals, based on Defendant's claims in marketing materials for Dr. Bronner's Toothpaste.

137. Plaintiff and members of the Classes reasonably and justifiably relied on Defendant's claims in marketing materials for Dr. Bronner's Toothpaste when purchasing Dr. Bronner's Toothpaste and would not have purchased Dr. Bronner's Toothpaste had they known it contained Heavy Metals.

138. Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and the members of the Classes have suffered actual

damages in the amount they spent on Dr. Bronner's Toothpaste, plus interest thereon.

## COUNT VI
### Unjust Enrichment
### *(On behalf of Plaintiff and the Nationwide Class and California Subclass)*

139. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

140. Plaintiff brings this claim under California law individually and on behalf of the members of the Classes against Defendant.

141. Plaintiff and the members of the Classes have conferred substantial benefits to Defendant through the purchases of Dr. Bronner's Toothpaste products. Defendant knowingly and willingly accepted, retained, and enjoyed these benefits.

142. Defendant either knew or should have known that the payments rendered by Plaintiff and the members of the Classes were given and received with the impression to a reasonable consumer that Dr. Bronner's Toothpaste does not contain Heavy Metals, both by the affirmative representations regarding the safety and natural ingredients in the product as well as by omitting the fact that the products do, in fact, contain Heavy Metals. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

143. Defendant was obligated to disclose the presence of Heavy Metals in Dr. Bronner's Toothpaste because Defendant had exclusive knowledge of the presence of Heavy Metals in Dr. Bronner's Toothpaste and Defendant actively concealed the presence of Heavy Metals in Dr. Bronner's Toothpaste from Plaintiff and the members of the Classes.

144. Defendant's acceptance and retention of the benefits of the payments from Plaintiff and the members of the Classes under the circumstances alleged herein make it inequitable for Defendant to retain these benefits.

145. Plaintiff and the members of the Classes are entitled to recover from

Defendant all amounts wrongfully collected, plus interest thereon.

146.  Plaintiff and the members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and others similarly situated, respectfully requests that the Court:

   a.  Certify the proposed Classes;

   b.  Appoint Plaintiff as class representative and Plaintiff's counsel as class counsel for each of the Classes;

   c.  Temporarily and permanently enjoin Defendant from selling Dr. Bronner's Toothpaste that contains Heavy Metals or order Defendant to disclose the presence of Heavy Metals in Dr. Bronner's Toothpaste on all packaging and marketing materials;

   d.  Order Defendant to recall all Dr. Bronner's Toothpaste that does not disclose the presence of Heavy Metals on its packaging;

   e.  Award declaratory relief and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged in this Class Action Complaint and injunctive relief to remedy Defendant's conduct;

   f.  Order Defendant to pay to Plaintiff and the Classes restitution to restore all funds acquired by means of any act or practice declared by the Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon to the extent provided by law;

   g.  Order Defendant to disgorge or return to Plaintiff and the Classes all

monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

h. Order Defendant to pay Plaintiff and the Classes all actual, compensatory, exemplary, and statutory damages and/or penalties permitted under the counts alleged in this Class Action Complaint in an amount to be determined by the Court, but at least $5,000,000;

i. Order Defendant to pay Plaintiff and the Classes punitive damages on any count so allowable;

j. Order Defendant to pay Plaintiff and the Classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

k. Award such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims so triable.

Dated:     July 29, 2025

By: _Matthew J. Langley_
Matthew J. Langley (SBN 342846)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
t: 312-576-3024
matt@almeidalawgroup.com

*Attorney for Plaintiff & the Proposed Classes*